1
2
3
4

LAW OFFICES OF LAWRENCE G. PAPALE
Lawrence G. Papale (SBN 67068)
lgpapale@papalelaw.com
1308 Main Street, Suite 117
Saint Helena, CA 94574
Tel: (707) 963-1704

5
6
7
8
9
10

METHVIN, TERRELL,
YANCEY, STEPHENS & MILLER, P.C.
James M. Terrell (*to be admitted pro hac vice*)
Courtney C. Gipson (*to be admitted pro hac vice*)
jterrell@mtattorneys.com
cgipson@mtattorneys.com
2201 Arlington Avenue South
Birmingham, Alabama 35205
Tel: (205) 939-0199
Fax: (205) 939-0399

11
12

*Attorneys for Plaintiff Elizabeth Bodle*

13
14

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ELIZABETH BODLE, individually and on behalf of all others similarly situated,<br><br>            Plaintiff<br><br>      vs.<br><br>JOHNSON & JOHNSON CONSUMER, INC.,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case Number: _____

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

1

Plaintiff Elizabeth Bodle, individually and on behalf of all others similarly situated, brings this action against Defendant Johnson & Johnson Consumer Inc. ("Johnson & Johnson").   In support thereof, Plaintiff states as follows:

### INTRODUCTION

1.      Plaintiff is a mother of two who was recently diagnosed with acute myloid leukemia ("AML").  As she is in her early fifties and healthy, Plaintiff and her spouse became suspicious as to why she was the unfortunate victim of such a deadly disease.  Through online research, they learned that a human carcinogen was recently found present in a large number of popular sunscreens.  Plaintiff is an avid user of sunscreen and her preferred brand, Neutrogena, is sold by Defendant Johnson & Johnson.

2.      Recent independent scientific testing, confirmed by Johnson & Johnson through a massive nationwide recall, has revealed that several of Johnson & Johnson's Neutrogena sunscreen products contain dangerous and unacceptable levels of benzene, a known human carcinogen (hereinafter the "Sunscreens").

3.      The presence of a classified human carcinogen known as benzene rendered the Sunscreens adulterated, misbranded, and unlawful for sale.  Each and every one of the Sunscreens have been marketed and sold by Johnson & Johnson under the label "sunscreen" through packaging and other advertising materials, as required by 21 C.F.R. § 201.327(b).  Each and every one of the Sunscreens also fails to include labeling indicating that the Sunscreen may contain benzene as an active or inactive ingredient.

4.      Plaintiff brings this Class Action on behalf of herself and other similarly situated purchasers of certain sunscreen products manufactured, marketed, distributed, and sold by Johnson & Johnson under the brand name "Neutrogena."  Johnson & Johnson's conduct with respect to the

Sunscreens caused economic damages to Plaintiff and the putative Class.  This suit is brought for injunctive relief and restitution of the full purchase price of the Sunscreens.

## FACTUAL ALLEGATIONS

### The Regulation of Sunscreen

5.     All products that claim to provide Broad Spectrum Sun Protection Factor ("SPF") protection, including the Sunscreens, are regulated by the FDA as over-the-counter drugs, rather than as cosmetics.  21 C.F.R. § 352, *et seq.*  The FDA requires sunscreen manufacturers to subject their products to certain testing before they are made available to any consumer.  *Id.* at § 352.70, *et seq.* The FDA has also identified those materials that qualify as acceptable active ingredients for products labeled as sunscreen.  *Id.* at § 352.10.  Benzene is not one of those acceptable ingredients.  *See id.*

6.     The FDA's regulations provide that an "over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets" certain conditions.  21 C.F.R. § 352.1(a).  Among other things, the product must contain "only suitable inactive ingredients which are safe in the amounts administered," *id.* at § 330.1(e), and contain only listed active ingredients at levels "that do[] not exceed the amount reasonably required to achieve [their] intended effect,"  *id.* at § 330.1(h).

### The Human Carcinogen Benzene

7.     Benzene is a simple hydrocarbon, $C_6H_6$, often found in crude oil and most easily identified by the smell associated with gasoline. It is used in industrial settings to make plastics, resins, synthetic fibers, and rubber lubricants, as well as dyes, detergents, drugs, and pesticides.

8.     Benzene is classified as a human carcinogen by the United States Department of Health and Human Services ("DHHS"). The World Health Organization ("WHO") and the International Agency for Research on Cancer ("IARC") have concluded that benzene is a Group 1

compound, *i.e.* it is "carcinogenic to humans."  *See* Letter from David Light, et al., Valisure, LLC, to Division of Dockets Management, FDA, at p. 1[1] (May 24, 2021), attached hereto as Exhibit A (citing *IARC Monographs on the Identification of Carcinogenic Hazards to Humans*, INT'L AGENCY FOR RESEARCH ON CANCER & WORLD HEALTH ORG., https://monographs.iarc.who.int/list-of-classifications (last visited Sept. 29, 2021).

9.     Scientific studies have established that exposure to benzene can cause leukemia (including acute myeloid leukemia ("AML")), other blood and bone marrow disorders, and a weakened immune system. In addition, benzene has been linked to multiple myeloma and non-Hodgkin's lymphoma.  *See id.* at p. 6 (citing *Benzene and Cancer Risk*, AM. CANCER SOCIETY (January 5, 2016), https://www.cancer.org/cancer/cancer-causes/benzene.html).

10.     The Food and Drug Administration ("FDA") classifies benzene as a Class 1 solvent, meaning that it "should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity or . . . deleterious environmental effect."  *Q3C – Tables and List Guidance for Industry*, FOOD & DRUG ADMIN. (June 2017), https://www.fda.gov/media/71737/download; *see also* Exhibit A at pp. 1–2.  In those limited cases where use of benzene is "unavoidable in order to produce a drug product with a significant therapeutic advance," the FDA has restricted levels to 2 parts per million ("ppm").  *Id.*  In all other cases, no level of benzene is acceptable.  *See id.*

11.     Products with avoidable levels of benzene do not "contain[] only suitable inactive ingredients which are safe in the amounts administered" or contain only listed active ingredients at levels "that do[] not exceed the amount reasonably required to achieve [their] intended effect."  21 C.F.R. § 330.1(e),(h); *see id.* at § 352.1(a). Accordingly, per FDA guidelines, any significant detection of benzene in the Sunscreens should be deemed unacceptable.

---

[1] Citations are to the page number listed in the Exhibit rather than the ECF docketed number.

CLASS ACTION COMPLAINT

*The Valisure Citizen Petition to the FDA*

12.     Valisure is an independent pharmacy, registered with the FDA, whose scientists analyze the safety of various consumer products.  On May 25, 2021, Valisure filed a citizen petition with the FDA, detailing its findings from a study on the potential carcinogenicity of active ingredients in a variety of sunscreens and after sun products, including numerous products manufactured, marketed, and sold by Johnson & Johnson.  Valisure requested that the FDA recall all batches of sunscreen products in which benzene was detected, the majority of which were Neutrogena products containing the carcinogen.  *See* Exhibit A.

13.     Notably, Valisure identified benzene levels over two ppm in ten Neutrogena sunscreen batches from five separate products lines.  *Id.* at p. 12.  Valisure only identified fourteen products in this category with Neutrogena making up the overwhelming majority and constituting the three highest levels of benzene.  *Id.*  Below is "Table 2" from Valisure's report where benzene was detected at two ppm or higher.  It has been highlighted to show the Neutrogena products:

| Brand Name | Type | Description | SPF | UPC | Lot | Exp. | Active Pharmaceutical Ingredient(s) | Benzene Avg ppm | % St Dev |
|---|---|---|---|---|---|---|---|---|---|
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 086800100416 | 04820E04 | 2022-01 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 6.26 6.77* | 7% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 | 70 | 086800100409 | 07020E01 | 2023-02 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 5.96 | 7% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 | 70 | 086800100409 | 06920E01 | 2023-02 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 5.76 | 5% |
| Sun Bum | Gel | Cool Down Gel | N/A | 871760002005 | S0082C | -- | N/A (Cosmetic Product) | 5.33 5.49* | 3% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 | 70 | 086800100409 | 02320E01 | 2022-12 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 5.30 | 2% |
| Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray - SPF 100 | 100 | 086800101444 | 04721E02 | 2023-01 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 5.20 5.59* | 5% |
| CVS Health | Spray | After-sun Aloe Vera Soothing Spray | N/A | 050428390832 | 8140449A | -- | N/A (Cosmetic Product) | 4.71 4.55* | 1% |
| Neutrogena | Spray | Invisible Daily Defense Body Sunscreen Broad Spectrum SPF 60+ | 60+ | 086800111542 | 04921E01 | 2024-01 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10% | 4.65 5.27* | 4% |

| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 086800100416 | 03120E02 | 2021-12 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 4.11 6.00** | 15% |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray - SPF 100 | 100 | 086800101444 | 28020E01 | 2022-09 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 4.01 4.00* | 4% |
| CVS Health | Spray | After-sun Aloe Vera Soothing Spray | N/A | 050428390832 | 4111849A | -- | N/A (Cosmetic Product) | 3.58 3.93* | 4% |
| Neutrogena | Spray | Beach Defense Spray Body Sunscreen SPF 50 | 50 | 086800112549 | 25520E01 | 2023-08 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10% | 3.52 3.71* | 3% |
| Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray - SPF 100 | 100 | 086800101444 | 31420E04 | 2022-10 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 3.08 2.64* | 2% |
| Fruit of the Earth | Gel | Aloe Vera Gel | N/A | 071660100200 | 6612940A | -- | N/A (Cosmetic Product) | 2.78 2.94* | 6% |

*Id.*

14.     Valisure found that twenty-six product batches had benzene in concentrations between 0.1 ppm and 2.0 ppm.  *Id.* at p. 13.  Of those, thirteen were Neutrogena products[2] as highlighted below:

| Brand Name | Type | Description | SPF | UPC | Lot | Exp. | Active Pharmaceutical Ingredient(s) | Benzene Avg ppm | % St Dev |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Neutrogena | Spray | Invisible Daily Defense Body Sunscreen Broad Spectrum SPF 60+ | 60+ | 0868001115 42 | 17820E01 | 2023-05 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10% | 1.99 1.66* | 8% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 0868001004 16 | 06420E05 | 2022-02 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 1.44 1.06* | 6% |
| Raw Elements | Lotion | Eco Formula Sunscreen Lotion SPF 30 | 30 | 8588550020 | 58J19 | 2021-07 | Zinc Oxide 23% | 1.35 1.31* | 9% |
| CVS Health | Spray | After-sun Aloe Vera Soothing Spray | N/A | 0504283908 32 | 1101990A | -- | N/A (Cosmetic Product) | 0.90 1.04* | 3% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 | 70 | 0868001004 09 | 26119E01 | 2022-08 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 0.87 | 9% |
| CVS Health | Gel | After-sun Aloe Vera Moisturizing Gel | N/A | 0504283248 37 | 4500231A | -- | N/A (Cosmetic Product) | 0.81 0.98* | 2% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 0868001004 16 | 08119F36 | 2022-02 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.77 | 4% |
| SunBurnt | Gel | Advanced After-Sun Gel | N/A | 3243302100 60 | 62R20 | 2022-12 | N/A (Cosmetic Product) | 0.75 0.87* | 2% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 0868001004 16 | 32619E06 | 2021-10 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.73 | 9% |
| Goodsense | Lotion | Sunscreen Lotion SPF 30 | 30 | 8460360011 43 | 070606920 | 2022-07 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10% | 0.71 | 4% |
| Neutrogena | Spray | CoolDry Sport Water-Resistant Sunscreen Spray SPF 70 | 70 | 0868001003 79 | 33719E01 | 2022-10 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 0.66 | 5% |

[2] Plaintiff reserves her right to include other sunscreen products manufactured, sold, and distributed by Johnson & Johnson should discovery identify additional products relevant to this action.

6

| Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 30 Spray | 30 | 086800100386 | 28219E02 | 2021-09 | Avobenzone 3%, Homosalate 8%, Octisalate 5%, Octocrylene 8% | 0.49 | 18% |
| Banana Boat | Spray | Kids Max Protect & Play Sunscreen C-Spray SPF 100 | 100 | 079656050820 | 200910346 | 2023-02 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.41 0.43* | 7% |
| Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray - SPF 100 | 100 | 086800101444 | 35219E05 | 2021-11 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.41 | 8% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 086800100416 | 29519E02 | 2021-09 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.37 0.38* | 2% |
| Banana Boat | Spray | UltraMist Deep Tanning Dry Oil Continuous Clear Spray SPF 4 | 4 | 79656046632 | 200944022 | 2023-03 | Homosalate 3.0%, Octocrylene 1.0% | 0.36 | 18% |
| Banana Boat | Spray | Kids Max Protect & Play Sunscreen C-Spray SPF 100 | 100 | 079656050820 | 200273634 | 2022-12 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.19 | 11% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 | 70 | 086800100409 | 13019F84 | 2022-04 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 0.18 | 10% |
| Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 45 | 45 | 086800100393 | 15719F83 | 2022-05 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 2.35%, Oxybenzone 6% | 0.15 | 12% |
| Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 100 | 100 | 79656050806 | 201060792 | 2023-03 | Avobenzone 3.0%, Homosalate 10.0%, Octisalate 5.0%, Octocrylene 10.0%, Oxybenzone 6.0% | 0.15 | 4% |
| Neutrogena | Lotion | Ultra Sheer Dry-Touch Water Resistant Sunscreen SPF 70 | 70 | 868006877002 | 0090L0069 | 2022-06 | Avobenzone 3.0%, Homosalate 15.0%, Octisalate 5.0%, Octocrylene 2.8%, Oxybenzone 6.0% | 0.13 | 73% |
| Neutrogena | Spray | CoolDry Sport Water-Resistant Sunscreen Spray SPF 50 | 50 | 086800100362 | 15619F25 | 2022-05 | Avobenzone 2.7%, Homosalate 9%, Octisalate 4.5%, Octocrylene 6%, Oxybenzone 4.5% | 0.13 | 4% |
| TopCare Everyday | Lotion | Ultimate Sheer Sunscreen Lotion SPF 70 | 70 | 036800459007 | 9533119A | 2021-11 | Avobenzone 3%, Homosalate 10%, Octisalate 3%, Octocrylene 7%, Oxybenzone 6% | 0.12 0.16* | 6% |
| EltaMD | Spray | UV Aero Broad-Spectrum Full-Body Sunscreen Spray, SPF 45 | 45 | 390205025879 | 67155I | 2022-11 | Zinc Oxide 9.3%, Octinoxate 7.5% | 0.11 0.17* | 18% |
| EltaMD | Spray | UV Aero Broad-Spectrum Full-Body Sunscreen Spray, SPF 45 | 45 | 390205025879 | 67155H | 2022-11 | Zinc Oxide 9.3%, Octinoxate 7.5% | 0.11 | 9% |
| Banana Boat | Spray | Kids Max Protect & Play Sunscreen C-Spray SPF 100 | 100 | 079656050820 | 200243635 | 2022-12 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.11 | 19% |

*Id.*

15.    By way of reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by any worker expecting to be exposed to benzene at concentrations of 0.1 ppm.  *See id.* at p. 2 (quoting *The National Institute for Occupational Safety and Health (NIOSH), Benzene*, CENTERS FOR DISEASE CONTROL & PREVENTION (October 30, 2019), https://www.cdc.gov/niosh/npg/npgd0049.html; *The National Institute for Occupational Safety and Health, BENZENE: Systemic Agent*, CENTERS FOR DISEASE CONTROL & PREVENTION (2011), https://www.cdc.gov/niosh/ershdb/emergencyresponsecard_

7

29750032.html).   NIOSH lists "skin absorption" as one way a person could be exposed to dangerous levels of benzene.  *See id.*

16.    Valisure determined that benzene is not unavoidably present in the sunscreen products.  Indeed, many of the sunscreens that Valisure tested contained no benzene.  Nor is benzene's presence in the products related to any known, let alone significant, therapeutic advance. *See id.* at pp. 1–2.  Benzene is not a listed active or inactive ingredient on the label of any of the Sunscreens, and Johnson & Johnson has never otherwise warned consumers that the Sunscreens may contain benzene.

17.    Valisure states that the presence of benzene in the Sunscreens may be the result of contamination.  *See, e.g.*, *id.* at pp. 2–4.  Valisure does not identify how this contamination could have occurred, but its testing showed how readily detectable this dangerous contaminant is in the Sunscreens.

18.    As Valisure observed, the presence of a known human carcinogen in the Sunscreens is especially troubling since they are "widely recommended for the prevention of skin cancer and regularly used by adults and children in large volumes."  *Id.* at p. 2.  Because "[s]unscreen products are typically used in many times higher volume than standard drug products like tablets or capsules," "even a relatively low concentration limit can result in very high total exposure."  *Id.* at 16.  A researcher from Yale University made a compelling comment to Valisure: "Considering that human skin has a large total surface area (~1.85 m2), and that ~28.5 g of sunscreen is needed per application to properly cover that skin surface, it follows then that there is not a safe level of benzene that can exist in sunscreen products."  *See id.* at p. 17 (quoting Email from Dr. Christopher Bunick, MD, PhD, Assoc. Prof. of Dermatology at Yale University to Valisure).

19.    To put this figure in context, at "the FDA conditional restriction limit of 2 ppm for benzene, 28.5 g of sunscreen would contain 57,000 ng of benzene in a single application which

8

may reasonably be used 4 times per day, therefore amounting to 228,000 ng of benzene exposure per day." *Id.* at p. 16.   Other comparable carcinogens, such as N-Nitrosodimethylamine ("NDMA"), have permissible daily intakes of around 96 ng.   *Id.*  This means a sunscreen with a benzene detection of 6.26 ppm, such as Johnson & Johnson's Ultra Sheer Weightless Sunscreen Spray, SPF 100+, equates to approximately 695,800 ng of benzene in one day or 7,248 times the limit for comparable carcinogens.  *Id.*

***Johnson & Johnson's Response to Valisure's Petition***

20.     As Valisure explained in its petition, the presence of benzene in the Sunscreens renders them adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") and misbranded under Section 502 of the FDCA, in violation of 21 U.S.C. §§ 351 and 352, respectively. *See id.* at p. 2.  The Sunscreens are also misbranded under CAL. HEALTH & SAFETY CODE § 111330.

21.     Federal and analogous state law prohibits the manufacture, distribution, and receipt of any misbranded or adulterated drug.  *See* 21 U.S.C. § 331(a); CAL. HEALTH & SAFETY CODE § 111440.  Nonetheless and despite the Valisure petition's extensive reporting on the presence of benzene in its products, Johnson & Johnson waited nearly two months before removing some of the Sunscreens from the market or warning the public of the risks to their health and safety.

22.     In its public announcement, Johnson & Johnson stated that it was only recalling the aerosol Sunscreens "[o]ut of an abundance of caution" and suggested that the presence of benzene in its products is not dangerous.  *See Aerosol Sunscreen Voluntary Recall Statement*, NEUTROGENA, https://www.neutrogena.com/sunscreen-recall.html (last visited September 17, 2021); *Johnson & Johnson Consumer Inc. Issues Voluntary Recall of Specific NEUTROGENA® and AVEENO® Aerosol Sunscreen Products Due to the Presence of Benzene*, JOHNSON & JOHNSON (July 14, 2021), https://www.jnj.com/johnson-johnson-consumer-inc-issues-voluntary-recall-of-specific-neutrogena-and-aveeno-aerosol-sunscreen-products-due-to-the-presence-of-benzene.

CLASS ACTION COMPLAINT

23.     To date, however, Johnson & Johnson has not explained why or how benzene is present in the Sunscreens, or whether Johnson & Johnson conducted testing that could and should have detected benzene at the outset.

***Johnson & Johnson's Branding, Marketing, and Advertising Strategy***

24.     Neutrogena touts itself as "[l]eading the way" in product testing.  On its website, Neutrogena dedicates an entire page to its purported high-testing standards, claiming to give readers "the facts" so that they can "feel good about how" Neutrogena makes its products.  *See* Neutrogena Product Testing, Neutrogena, https://www.neutrogena.com/producttesting.html (last visited September 17, 2021).  There, it states that the company "not only follow[s] individual country regulations, but also look[s] to incorporate the best thinking and practices from top authorities for skincare products around the world."  *Id.*  The webpage goes on to explain that the company "set[s] a high bar for using ingredients.  Our ingredients are screened for quality, manufacturing process, government regulations, published research, and our own ingredient safety databases."  *Id.*  The company also makes specific claims about its manufacturing process, emphasizing that "[s]afety goes beyond the ingredients list," with attention also paid to "how our ingredients are used, our manufacturing safeguards, how the products are used, and testing requirements for our products."  *Id.*

25.     Neutrogena's product testing webpage links to another Johnson & Johnson webpage regarding the company's safety and care commitment.  There, Johnson & Johnson purports to make its customer's safety a "priority" with a safety assessment process that is "the most rigorous in the world":

> Your safety is our priority.  That's why our safety assessment process meets or exceeds industry and regulatory standards for baby and beauty personal care products.  It's a process that never ends–we continually review our product ingredients against the latest research and consumer feedback.  We believe our process is among the most rigorous in the world and is at the core of our Safety & Care Commitment.

CLASS ACTION COMPLAINT

Commitment, JOHNSON & JOHNSON, https://safetyandcarecommitment.com/commitment (last visited September 17, 2021).

26.     Representations made on Johnson & Johnson and Neutrogena's websites remain today, despite the recall of their products, making no mention of Valisure's findings.

27.      The revelation that the Sunscreens contain unacceptable levels of benzene, and are therefore adulterated and misbranded, also stands in stark contrast to Johnson & Johnson's long-standing branding, marketing, and advertising strategy for Neutrogena products.  That strategy revolves around convincing consumers that the Sunscreens are safe and healthy.

28.     The packaging for the Sunscreens, as well as Neutrogena's website, have long represented to consumers that the Sunscreens are "#1 Dermatologist Recommended."  For example, the first page of its website states that the brand is "#1 Dermatologist Recommended." NEUTROGENA, https://www.neutrogena.com/ (last visited September 17, 2021).  The basis for this representation, which clearly aims to portray the product as safe and healthy, is nowhere specified on either the Sunscreens' packaging or Neutrogena's website.  And the representation remains unchanged even in the wake of Valisure's discovery and citizen's petition.

29.     For example, one of the Neutrogena products that Plaintiff purchased contained the following label:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   30.    As shown in the above image, Neutrogena also makes a point of associating the

17 word "clean" with its Ultra Sheer product line.  *See* Ultra Sheer ® Dry-Touch Sunscreen Broad

18 Spectrum SPF 70, NEUTROGENA, https://www.neutrogena.com/products/sun/ultra-sheer-dry-

19 touch-sunscreen-broad-spectrum-spf-70/6868770.html?tilePosition=5#q=ultra%2Bsheer&lang=

20 default&start=5 (last visited September 17, 2021).   Ironically, in Valisure's testing, Neutrogena's

21 Ultra Sheer products held four of the top five spots in benzene ppm. *See* Exhibit A at p. 12.
22

23   31.    Johnson & Johnson's efforts to portray its sunscreens as clean and dermatologist

24 recommended extends to its commercials as well, which prominently portray Neutrogena suncare

25 products as being number one among dermatologists. *See, e.g.*, *Neutrogena Ultra Sheer Dry Touch*

26 *TV Commercial Featuring Jennifer Garner*, ISPOT.TV, https://www.ispot.tv/ad/7ZH8/neutrogena-

27 ultra-sheer-dry-touch-featuring-jennifer-garner (last visited September 17, 2021); *Neutrogena*
28

CLASS ACTION COMPLAINT

*Beach    Defense    TV    Commercial,    'More    Protection.    More    Sun.'*,   ISPOT.TV,
https://www.ispot.tv/ad/OBGJ/neutrogena-beach-defense-more-protection-more-sun  (last visited
September 17, 2021).

32.     In addition, Johnson & Johnson promotes the safety and benefits of sunscreens
through various articles on its website, ironically emphasizing that they are essential to cancer
prevention without mentioning the risks associated with benzene.   *See, e.g.*,   Krista Bennett
DeMaio, *8 Things We Learned From the New Neutrogena Documentary In the Sun*, JOHNSON &
JOHNSON   (May   18,   2021),   https://www.jnj.com/health-and-wellness/sun-safety-facts-from-
neutrogena-documentary-in-the-sun; Sunny Sea Gold, *The Science of Sunscreen: 3 Experts Tackle
Common   Myths   About   Its   Safety*,   JOHNSON   &   JOHNSON   (May   20,   2019),
https://www.jnj.com/health-and-wellness/sunscreen-safety-myths-experts-tackle-the-science-of-
sun-protection ("'Despite anecdotal reports questioning the safety of the ingredients in sunscreen,
there is no data that shows there is any harm to your health by using it.'");  Krista Bennett DeMaio,
*5 Things We Now Know About the Safety and Effectiveness of Sunscreen*, JOHNSON & JOHNSON
(May  23,  2017),  https://www.jnj.com/health-and-wellness/5-things-we-now-know-about-safety-
and-effectiveness-of-sunscreen (encouraging frequent application of one ounce of sunscreen to
prevent skin cancer and emphasizing that both chemical and mineral sunscreens are safe to use).

33.     Johnson & Johnson's failure to prevent the presence of benzene in the Sunscreens,
and its sale of these dangerous and illegal products, constitutes actionable fraud.   Johnson &
Johnson misled and defrauded consumers, and continues to mislead and defraud consumers, by
making affirmative misrepresentations that portray the Sunscreens as safe, and omitting from the
Sunscreens' packaging and marketing materials information about the actual danger of the
Sunscreens, including any warning to consumers that the Sunscreens may contain unacceptable
levels of benzene rendering them adulterated, misbranded, and illegal.

13

34.     While many of Neutrogena's Sunscreens have been recalled and are not currently for sale on the company's website, Ultra Sheer Dry-Touch Water Resistant Sunscreen Lotion SPF 70 is still for sale despite being listed in Valisure's petition as containing an average of 0.13 ppm of benzene.  *See* Ultra Sheer ® Dry-Touch Sunscreen Broad Spectrum SPF 70, NEUTROGENA, https://www.neutrogena.com/products/sun/ultra-sheer-dry-touch-sunscreen-broad-spectrum-spf-70/6868770.html?tilePosition=5#q=ultra%2Bsheer&lang=default&start=5 (last visited September 17, 2021).

35.     Because benzene is not a necessary ingredient in the Sunscreens—and if it were, concentrations above 2 ppm are entirely prohibited by federal law—the Sunscreens are illegal and unfit for sale in trade or commerce.  This prohibition on any sale of the Sunscreens whatsoever renders the adulterated, misbranded, and unlawfully sold Sunscreens legally worthless.  If the Sunscreens had been truthfully and accurately labeled, no consumer would have purchased the Sunscreens.  Accordingly, Plaintiff and the Class were injured by the full purchase price of the Sunscreens.

36.     Plaintiff and the Class paid for suncare products free of carcinogens.  Because Johnson & Johnson sold them products that may contain dangerous levels of benzene, Plaintiff and the Class were deprived of the benefit of their bargain.

37.     Plaintiff is further entitled to damages for the injury sustained in being exposed to high levels of acutely toxic benzene, damages related to Johnson & Johnson's conduct, and injunctive relief.

## **PARTIES**

38.     Plaintiff Elizabeth Bodle is a resident of Fairfax, California.  Neutrogena has been her preferred brand of sunscreen, and she has purchased Neutrogena sunscreens, including Ultra Sheer Dry-Touch Water Resistant Sunscreen Lotion SPF 70.  When purchasing the Sunscreen,

14

Plaintiff reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer, distributor, and pharmacy that the Sunscreen was properly manufactured, free from defects, and safe for its intended use. Plaintiff relied on these representations and warranties in deciding to purchase the Sunscreen manufactured by Johnson & Johnson, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Sunscreen from Johnson & Johnson if she had known that it was not in fact properly manufactured free from defects, unadulterated, and properly labeled.

39.     Plaintiff has standing to represent members of the Class because there is sufficient similarity between the specific Sunscreen purchased by the Plaintiff and the other Sunscreens purchased by the Class. Specifically, each and every one of the Sunscreens are marketed and labeled in the same way – as "sunscreen" – and fail to indicate to consumers that the Sunscreens may contain benzene as an active or inactive ingredient; accordingly, all members of the Class were injured in substantially the same manner.

40.     Defendant Johnson & Johnson Consumer Inc. is a New Jersey corporation doing business in California. Johnson & Johnson Consumer Inc. is a subsidiary of the Johnson & Johnson conglomerate. It may be served via its registered agent, C T Corporation System, at 330 N. Brand Blvd Ste 700, Glendale, CA 91203. Defendant is the manufacturer and/or distributor of the Sunscreens. Upon information and belief, Johnson & Johnson has, and continues to, operate the Neutrogena brand from its offices in Los Angeles, California.

**JURISDICTION & VENUE**

41.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d), because: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the action

is pled as a class action involving more than 100 putative class members, and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant."

42.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because substantial acts in furtherance of the alleged improper conduct, including the dissemination of deceptive information regarding the benefits of the Sunscreens occurred within this District. Venue is also proper under 18 U.S.C. § 1965(a) because Johnson & Johnson transacts substantial business in this District.

43.     This Court has jurisdiction over Johnson & Johnson because Johnson & Johnson is authorized to conduct and do business in California. Johnson & Johnson has marketed, manufactured, promoted, distributed, and sold sunscreen protection products, including the Sunscreens, from California.  Johnson & Johnson has established sufficient minimum contacts with this State by having availed itself of the markets in this State through its promotion, manufacture, sale, distribution, and marketing of its sunscreen protection products, such that exercise of jurisdiction by this Court is permissible.  A substantial portion of all claims alleged on behalf of Plaintiff and the Class arise out of conduct occurring in the State of California.

**CLASS ACTION ALLEGATIONS**

44.     Plaintiff brings this case as a class action on behalf of those persons who were harmed by Defendant's (1) violation of California's Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200, *et seq.*), (2) violation of California's Consumers Legal Remedies Act (CAL. CIV. CODE § 1750, *et seq.*), (3) violation of California's False Advertising Law (CAL. BUS. & PROF. CODE § 17500, *et seq.*), and (4) unjust enrichment/quasi-contract.  All of the information necessary to determine the identity of the putative Class members and the damages that those putative Class members have suffered is currently in Defendant's possession or control.

45.     The Class is defined as follows:

16

All consumers who purchased any lotion or spray Sunscreen in the United States for personal use or consumption.

46.   Excluded from the Class are counsel of record, judicial officers, members of the judiciary, Defendant and its related persons, agents, employees, officers, and/or directors.  Plaintiff maintains the right to create additional classes or subclasses, if necessary, and to revise the Class definition to maintain a cohesive Class that does not require individual inquiry to determine liability.

### **Common Questions of Law and Fact Predominate**

47.   There are common questions of law and fact of general interest to the Class.  These common questions of law and fact predominate over questions affecting only individual members of the Class.  Included among the common questions are:

  a.  Whether Johnson & Johnson's Sunscreens contained benzene;

  b.  Whether Johnson & Johnson's representations and omissions, seen in their marketing, advertising, packaging, labeling, and other promotional materials, are true, or are misleading, or objectively reasonably likely to deceive;

  c.  Whether the alleged conduct constitutes violations of the laws asserted;

  d.  Whether Johnson & Johnson's alleged conduct violates public policy;

  e.  Whether Johnson & Johnson engaged in false or misleading advertising;

  f.  Whether Johnson & Johnson's manufacturing, marketing, distributing, and selling of the Sunscreens violates California's Sherman Food, Drug, and Cosmetics Law, CAL. HEALTH & SAFETY CODE § 111225, *et. seq.*;

  g.  Whether Johnson & Johnson's business practices as alleged herein are unlawful under the Consumers Legal Remedy Act, CAL. CIV. CODE § 1750, *et seq.*;

  h.  Whether Johnson & Johnson's business practices as alleged herein were and are likely to deceive reasonable consumers in the United States by obfuscating the

true nature of the Sunscreens, all in violation of CAL. BUS. & PROF. CODE §
17500;

i.   Whether Johnson & Johnson is liable to Plaintiff and the Class for unjust
enrichment;

j.   Whether Plaintiff and members of the putative Class are entitled to damages
and/or restitution and the proper measure of that loss; and

k.   Whether Plaintiff and the members of the putative Class are entitled to
declaratory and injunctive relief.

**Typicality and Numerosity**

48.    The claims of the named Plaintiff are typical of the claims of the Class, and given
the nature of the claims and Johnson & Johnson's sales of the Sunscreens across the nation, Plaintiff
believes that the putative Class is so numerous that joinder of all members is impracticable.

**Adequate Representation**

49.    The named Plaintiff will fairly and adequately protect the interests of the members
of the Class and has no interest antagonistic to those of other Class members.  Plaintiff has retained
Class Counsel who are competent to prosecute class actions and are financially able to represent
the Class.

**Superiority**

50.    The class action mechanism is superior to other available methods for the fair and
efficient adjudication of this litigation since individual joinder of all members of the Class is
impracticable.  The class action mechanism provides the benefit of unitary adjudication, economies
of scale and comprehensive supervision by a single court.  The interests of judicial economy favor
adjudicating the claims of Plaintiff and putative Class members as a Class rather than for Plaintiff
and putative Class members on an individual basis.

51.     Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### Unlawful, Unfair and Fraudulent Business Practices
(CAL. BUS. & PROF. CODE § 17200, *et seq.*)

52.     Plaintiff re-alleges and incorporates herein Paragraphs 1–51.

53.     Plaintiff brings this claim against Johnson & Johnson for violation of CAL. BUS. & PROF. CODE § 17200, *et seq.* on behalf of herself and the members of the proposed Class.

54.     Johnson & Johnson's manufacturing, marketing, distributing, and selling of the Sunscreens violates California's Sherman Food, Drug, and Cosmetics Law, CAL. HEALTH & SAFETY CODE § 111225, *et seq.* ("Sherman Law").

55.     The relevant part of the Sherman Law declares that a drug is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any drug.  *See* CAL. HEALTH & SAFETY CODE §§ 111330, 111440, 111445.  The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." CAL. HEALTH & SAFETY CODE § 109995.  Johnson & Johnson is a corporation and, therefore, a "person" within the meaning of the Sherman Act.

56.     The business practices alleged above are unlawful under the Consumers Legal Remedy Act, CAL. CIV. CODE § 1750, *et seq.* ("CLRA"), which forbids deceptive advertising.

19

57.     The business practices alleged above are unlawful under CAL. BUS. & PROF. CODE. § 17200, *et seq.* by virtue of violating CAL. BUS. & PROF. CODE. § 17500, *et seq.*, which forbids untrue advertising and misleading advertising.

58.     There is no benefit to consumers or competition by deceptively marketing sunscreen products.   Indeed, the harm to consumers and competition caused by Johnson & Johnson's deceptive marketing of the Sunscreens is substantial.

59.     Plaintiff and other members of the putative Class had no way of knowing that the Sunscreens they bought were not actually as marketed.   Thus, they could not have reasonably avoided the injury each of them suffered.

60.     The gravity of the consequences of Johnson & Johnson's conduct as described above outweighs any justification, motive or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and it is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and other members of the putative Class.

61.     Johnson & Johnson's deceptive marketing of the Sunscreens is likely to deceive reasonable consumers throughout the United States.   Indeed, Plaintiff and other members of the putative Class were unquestionably deceived regarding the true danger of the Sunscreens, as Johnson & Johnson's marketing of the Sunscreens nowhere discloses that the Sunscreens may contain benzene, but instead portrays the Sunscreens as safe and healthy.   Said acts are deceptive business acts and practices.

62.     This deception caused Plaintiff and other members of the putative Class to purchase the Sunscreens.   Had they known and understood the true nature and quality of the Sunscreens, Plaintiff and other members of the putative Class would not have purchased the Sunscreens.

63.     As a result of the business practices described above, CAL. BUS. & PROF. CODE §

17203 entitles Plaintiff and other members of the putative Class to an order enjoining such future

conduct on the part of Johnson & Johnson and such other solely injunctive or declaratory relief

which may be necessary as a result of Johnson & Johnson's wrongful conduct.

64.     The above-described unlawful business acts and practices, and each of them, present

a threat and reasonable likelihood of deception to Plaintiff and other members of the putative Class

in that Johnson & Johnson has systematically perpetrated and continues to perpetrate such acts or

practices on Plaintiff and other members of the putative Class by means of its deceptive

manufacturing, marketing, distributing, and selling of the Sunscreens.

**SECOND CAUSE OF ACTION**
**California Consumers Legal Remedies Act**
**(CAL. CIV. CODE § 1750, *et seq.*)**

65.     Plaintiff re-alleges and incorporates herein Paragraphs 1–51.

66.     Plaintiff brings this claim against Johnson & Johnson for violation of CAL. CIV.

CODE § 1750, *et seq.* ("CLRA") on behalf of herself and the members of the proposed Class.

67.     Johnson & Johnson's actions, representations, and conduct, as described above, and

each of them, have violated and continue to violate the CLRA, because they extend to transactions

that are intended to result, or which have resulted, in the sale or lease of goods or services to

consumers.

68.     Plaintiff and others similarly situated will continue to suffer harm and are

"consumers" as that term is defined by the CLRA in CAL. CIV. CODE § 1761(d).

69.     The Sunscreens that Plaintiff and members of the putative Class purchased from

Johnson & Johnson were "goods" within the meaning of CAL. CIV. CODE § 1761(a).

70.     By engaging in the actions, misrepresentations, and misconduct set forth above,

Johnson & Johnson has violated, and continues to violate, CAL. CIV. CODE § 1770(a)(5).

71.     Specifically, in violation of CAL. CIV. CODE § 1770(a)(5), Johnson & Johnson's acts and practices constitute deceptive methods of competition, in that it misrepresents the safety of the Sunscreens and omits that the Sunscreens contain a dangerous carcinogen.

72.     By engaging in the actions, misrepresentations, and misconduct set forth above, Johnson & Johnson has violated, and continues to violate, CAL. CIV. CODE § 1770(a)(7). Specifically, Johnson & Johnson's acts and practices constitute deceptive methods of competition in that Johnson & Johnson misrepresents the particular standard, quality, or grade of the Sunscreens, in violation of CAL. CIV. CODE § 1770(a)(7).

73.     By engaging in the actions, misrepresentations, and misconduct set forth above, Johnson & Johnson has violated, and continues to violate, CAL. CIV. CODE § 1770(a)(16). Specifically, in violation of CAL. CIV. CODE § 1770(a)(16), Johnson & Johnson's acts and practices constitute deceptive methods of competition, in that Johnson & Johnson represents that the Sunscreens have been supplied in accordance with a previous representation when they have not.

74.     Plaintiff requests that this Court enjoin Johnson & Johnson from continuing to employ the unlawful methods, acts, and practices alleged herein, and any other solely declaratory or injunctive relief the Court deems proper pursuant to CAL. CIV. CODE §§ 1780 and 1781.  If Johnson & Johnson is not restrained from engaging in these types of practices in the future, Plaintiff and other members of the putative Class will continue to suffer harm.

### THIRD CAUSE OF ACTION
### False Advertising Law
### (CAL. BUS. & PROF. CODE § 17500, *et seq.*)

75.     Plaintiff re-alleges and incorporates herein Paragraphs 1–51.

76.     Plaintiff brings this claim against Johnson & Johnson for violation of CAL. BUS. & PROF. CODE § 17500, *et seq.* on behalf of herself and the members of the proposed Class.

22

77.    At all material times, Johnson & Johnson engaged in a scheme of offering the Sunscreens for sale to Plaintiff and others similarly situated by way of, inter alia, commercial marketing.  These marketing materials misrepresented or omitted the safety of the Sunscreens and the fact that they may contain benzene, a dangerous carcinogen.  Said advertisements and inducements originated and were made from the State of California and come within the definition of advertising as contained in CAL. BUS. & PROF. CODE § 17500, *et seq.* in that such marketing materials were intended as inducements to purchase the Sunscreens and are statements disseminated by Johnson & Johnson to Plaintiff and other members of the putative Class and were intended to reach Plaintiff and other members of the putative Class.  Johnson & Johnson knew, or in the exercise of reasonable care should have known, that these statements were untrue or misleading.

78.    In furtherance of this plan and scheme, Johnson & Johnson has prepared and distributed from the State of California via commercial marketing, statements that deceptively represent the safety of the Sunscreens and omitted that a dangerous carcinogen may be present in the Sunscreens.  Consumers, including Plaintiff and other members of the putative Class, necessarily and reasonably relied on these materials concerning the Sunscreens.  Consumers, including Plaintiff and other members of the putative Class, were among the intended targets of such representations and omissions and would reasonably be deceived by such materials.

79.    Johnson & Johnson's above acts, in disseminating deceptive and untrue statements from the State of California and throughout the United States to consumers, were and are likely to deceive reasonable consumers, including Plaintiff and other members of the putative Class, by obfuscating the true nature of the Sunscreens, all in violation of CAL. BUS. & PROF. CODE § 17500.

80.     As a result of the above violations of CAL. BUS. & PROF. CODE § 17500, *et. seq.*, Johnson & Johnson has been unjustly enriched at the expense of Plaintiff and the members of the putative Class.

81.     Pursuant to CAL. BUS. & PROF. CODE § 17535, Plaintiff and the putative Class are entitled to an order of this Court enjoining Johnson & Johnson from such future conduct, and such other orders and judgments which may be necessary to disgorge Johnson & Johnson's ill-gotten gains and restore to any person in interest any money paid for the Sunscreens as a result of Johnson & Johnson's wrongful conduct.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment/Quasi-Contract**

82.     Plaintiff re-alleges and incorporates herein Paragraphs 1–51.

83.     Plaintiff brings this claim against Johnson & Johnson for unjust enrichment/quasi-contract on behalf of herself and the members of the proposed Class.

84.     Despite the serious risks of harm inherent in potentially exposing consumers to high levels of benzene, Johnson & Johnson has not disclosed these risks, and in fact has actively obfuscated the dangers of the Sunscreens by promising consumers the Sunscreens are safe.  Plaintiff and other members of the putative Class would not have bought the Sunscreens if they had known that the promises Johnson & Johnson made regarding the Sunscreens are false.

85.     As a result of Johnson & Johnson's deceptive marketing and labeling of its Sunscreens, Johnson & Johnson receives a benefit at the expense of Plaintiff and the putative Class, and it is unjust for Johnson & Johnson to retain that benefit.

86.     Under the circumstances, it is against equity and good conscience to permit Johnson & Johnson to retain the ill-gotten benefits that it received from Plaintiff and members of the putative Class in light of the fact that the Sunscreens they purchased were not what Johnson & Johnson

represented the Sunscreens to be. Thus, it is unjust or inequitable for Johnson & Johnson to retain the benefit without restitution to Plaintiff and other members of the putative Class.

87. As a direct and proximate result of Johnson & Johnson's actions, Johnson & Johnson has been unjustly enriched. Plaintiff and other members of the putative Class have a right to restitution in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests individually and on behalf of the alleged Class, that the Court enter judgment in her favor and against Defendant as follows:

A.    An order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B.    An order enjoining Defendant from selling the Sunscreens;

C.    An order declaring the Defendant's conduct violates the causes of action referenced herein;

D.    An order finding in favor of Plaintiff and the Class on all counts asserted herein;

E.    Compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.    Prejudgment interest on all amounts awarded;

G.    An order of restitution and all other forms of equitable monetary relief;

H.    Injunctive relief as pleaded or as the Court may deem proper; and

I.    An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

1

## <u>DEMAND FOR JURY TRIAL</u>

2

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff requests a trial by jury of all

3

claims alleged herein so triable.

4

5

Dated: October 4, 2021

6

7
/s/  Lawrence G. Papale
LAWRENCE G. PAPALE (SBN 67068)

8
LAW OFFICES OF LAWRENCE G. PAPALE
lgpapale@papalelaw.com

9
1308 Main Street, Suite 117
Saint Helena, CA 94574

10
Tel: (707) 963-1704

11
METHVIN, TERRELL, YANCEY, STEPHENS &

12
MILLER, P.C.
James M. Terrell (*to be admitted pro hac vice*)

13
Courtney C. Gipson (*to be admitted pro hac vice*)
jterrell@mtattorneys.com

14
cgipson@mtattorneys.com
2201 Arlington Avenue South

15
Birmingham, Alabama 35205
Tel: (205) 939-0199

16
Fax: (205) 939-0399

17

18
*Attorneys for Plaintiff Elizabeth Bodle*

19

20

21

22

23

24

25

26

27

28

26